THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. EARL VIRGIL DREW, Defendant-Appellee.

Fourth District   No. 4—87—0529

Opinion filed July 21, 1988.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Timothy M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On March 5, 1987, defendant Earl Virgil Drew was charged by indictment in the circuit court of Champaign County with the offense of residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3) allegedly committed on January 22, 1987. After a jury trial beginning June 8, 1987, defendant was convicted and subsequently sentenced to a term of eight years' imprisonment. After filing a timely notice of appeal, defendant made a motion in the circuit court on July 15, 1987, to withdraw his notice of appeal in order for that court to reconsider a motion by defendant in arrest of judgment. On that date, the motion to withdraw was allowed and on reconsideration of defendant's motion in arrest of judgment, that motion was allowed. The circuit court then vacated the conviction and discharged defendant on the grounds that he had not been brought to trial within 120 days of his incarcera-

tion for the instant offense in violation of section 103—5 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 103—5).

The State has appealed pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)) contending the court erred in discharging defendant because (1) he was first taken into custody for the offense involved here on February 9, 1987, which was within 120 days of his trial which started on June 8, 1987; and (2) even if the 120-day period started earlier, defendant was guilty of delay which tolled the running of the 120-day period. We agree that defendant was not taken into custody for this offense until February 9, 1987. Accordingly, we reverse and remand for further proceedings.

The record indicates that in entering the order from which appeal is taken, the following undisputed facts were before the circuit court. On January 23, 1987, the day after the alleged burglary, defendant was taken into custody by Kane County authorities for a number of traffic violations, including a charge of driving under the influence of intoxicating liquor and a charge of being a fugitive from justice in the State of Utah. In the meantime, a warrant had issued from the circuit court of Champaign County for the arrest of defendant for conduct giving rise to the instant charges. Kane County authorities became aware of the existence of that warrant on the date of defendant's arrest in that county. On February 6, 1987, all Kane County charges against defendant were dismissed except the charge for driving under the influence of intoxicating liquor. The record of proceedings in the circuit court of Kane County neither indicated that defendant made bond nor was otherwise discharged from custody in regard to the remaining charge. Neither did it remand him to the custody of the sheriff of Kane County. The driving under the influence charge in Kane County was dismissed on March 26, 1987.

Evidence before the circuit court of Champaign County further showed that on February 6, 1987, employees of the Kane County sheriff informed those of the Champaign County sheriff that defendant was then available for Champaign County authorities to take him into custody. Champaign County deputies went to Kane County on February 9, 1987, took defendant into custody, and transported him to the Champaign County jail. February 9, 1987, was within the 120-day period before trial, while February 6, 1987, was not, thus giving great significance to the question of on which day defendant came into the custody for the offense charged in the circuit court of Champaign County.

At times pertinent, section 103—5(a) of the Code stated that

"[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody" unless certain delays have occurred. (Ill. Rev. Stat. 1985, ch. 38, par. 103—5(a).) No case has been called to our attention where, as here (1) an accused is held on charges in one county when officials in that county are advised of the existence of a warrant for the accused in another county; (2) all of the charges in the first county are dismissed, except one charge remains; (3) the officials of the first county notify the second county the defendant is available for the second county to take into custody; and (4) officials of the second county take the accused into custody a few days later. However, the language and reasoning of Illinois cases indicates the 120-day period does not commence until charges are dismissed in the county having original custody or, as here, the accused is placed in the actual custody of the second county.

In *People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525, an accused had first been taken into custody in St. Clair County and charged with an offense in that county. He was then taken to Madison County pursuant to a writ of *habeas corpus ad prosequendum* for arraignment and was later returned to St. Clair County. He was subsequently returned to Madison County under a similar writ for a trial that was then postponed, and the accused was returned to St. Clair County. Finally, the charges in St. Clair County were disposed of, and the defendant was later transferred to Madison County pursuant to a writ of *habeas corpus ad prosequendum*. The supreme court held the custody of Madison County did not start until the charges pending in St. Clair County were disposed of. The *Davis* court cited with approval a statement in *People v. Clark* (1968), 104 Ill. App. 2d 12, 244 N.E.2d 842. The *Clark* court had stated that where an accused was in custody and awaiting trial in a county while charges pended in another county " 'he cannot be deemed to be in custody for the latter offense until such time as the proceedings against him in the first county are *terminated* and he is then *returned to*, or *held in custody for*, the second county.' " (Emphasis added.) *Davis*, 97 Ill. 2d at 13, 452 N.E. 2d at 530, quoting *Clark*, 104 Ill. App. 2d at 20, 244 N.E.2d at 846.

In *People v. Goins* (1988), 119 Ill. 2d 259, 518 N.E.2d 1014, an accused alleged to have committed a burglary near a county line was charged and taken into custody in the nearby county but not the county where the offense was committed. After being held in the nearby county, the accused was also charged in the county where the offense occurred. He was sent to that county for trial which occurred within 120 days of that defendant's transfer to that county but not

within 120 days of the beginning of his incarceration in the nearby county. A defense motion for discharge under the 120-day rule was denied and that defendant was convicted. On appeal, the appellate court affirmed, citing *Davis*. (*People v. Goins* (1985), 136 Ill. App. 3d 582, 483 N.E.2d 702.) The supreme court reversed and remanded for the purpose of permitting the trial court to determine whether that defendant was guilty of delay which would have tolled the running of the 120-day period.

In *Goins*, the supreme court distinguished the situation there from that in *Davis* on the basis that in *Davis* the defendant was being held in St. Clair County on a different charge than that upon which he was convicted in Madison County, while in *Goins* the defendant was being held on the same charge in each of the counties. The court noted that under section 9 of article VI of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, §9), the decision in *People v. Gilmore* (1976), 63 Ill. 2d 23, 344 N.E.2d 456, and section 1—6(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 1—6(a)), the requirement that, with minor exceptions, an accused be tried in the county in which the offense occurred is a requirement of venue and not of jurisdiction. Thus, in *Goins*, throughout the 120-day period, that defendant was being held for the same offense in a county where the court had jurisdiction to try the offense. Accordingly, the supreme court concluded he was deprived of his right under the 120-day rule.

■ Here, as in *Davis* and unlike in *Goins*, defendant was charged for different offenses in Kane County and in Champaign County. The record is undisputed that charges of having committed at least one offense in Kane County were pending against him in Kane County until after February 6, 1987. He had been held on at least one of those charges and the record does not show that he had ever been admitted to bail for those pending charges. The order of the Kane County circuit court does not show that defendant was remanded to the custody of the sheriff of that county. However, no case has been called to our attention which requires an order of remandment for a sheriff of the county where the court sits to return, after hearing, custody of a person who was in his custody before the hearing. Under the statement in *Clark*, which appeared in *Davis*, the knowledge of Kane officials that defendant was subject to a Champaign County warrant would not change defendant's status from that of being held for Kane County. The statement by a deputy of the Kane County sheriff that Champaign County officers could come and get defendant would not change the effect of the record of the circuit court of Kane County. Thus, defendant remained in the custody of Kane County, being held

for a pending offense until February 9, 1987, when he was "returned to the second county," Champaign County.

During the course of the proceedings, defendant moved for discharge under the 120-day rule several times. The first was on May 26, 1987, and the court denied it the next day. Such a motion was then made on June 8, 1987, just before the case went to trial and that motion was then denied. The issue was raised a third time in a motion in arrest of judgment denied on July 10, 1987. Then, after defendant had filed a notice of appeal, the court, on July 15, 1987, allowed withdrawal of the notice of appeal, reconsidered its ruling on the motion in arrest of judgment and discharged defendant.

The circuit judge apparently changed his mind between the rulings on the motion partly upon learning that for purposes of calculation of credit on sentence, the Champaign County sheriff's employees had been calculating the time in custody, in a case of this nature, from the date the warrant was issued and Kane County was advised of its existence. We recognize the complexities of the case, but we conclude that as long as charges were pending against defendant in Kane County, and he was not released from custody for those charges, under the language of *Davis*, he was not in custody in Champaign County until he was actually turned over to Champaign County. Neither the fact that officials in Kane County may have known that the other charges were later to be dismissed nor the intent to turn defendant over to Champaign County officers after February 6, 1987, changed the nature of defendant's custody.

Defendant relies partially upon the case of *People v. Fosdick* (1967), 36 Ill. 2d 524, 224 N.E.2d 242, in support of his theory he was in the custody of Champaign County authorities before February 9, 1987. *Fosdick* involved a special situation where Champaign County authorities, who had custody of an accused, had dismissed charges against him, allowed him to be returned to DeWitt County and then immediately filed identical charges against him. The supreme court held that the statutory 120-day period commenced when defendant's Champaign County incarceration began and was not tolled when charges were dismissed. In *Davis*, the supreme court stated that *Fosdick* was based upon the voluntary relinquishment of the accused by Champaign County and its attempt to evade the 120-day rule by dismissal and then refiling of the charges. That court concluded any precedent arising from *Fosdick* should be limited to its facts. (*Davis*, 97 Ill. 2d at 13, 452 N.E.2d at 530; see *People v. Bixler* (1971), 49 Ill. 2d 328, 275 N.E.2d 392.) Any such precedent is not applicable to the case here.

■ Defendant asserts the Champaign County prosecutor waived any objection to defendant's discharge when, on July 15, 1987, the court agreed to reconsider its ruling on defendant's motion in arrest of judgment and stated to counsel of the parties its intent to change its ruling and order defendant discharged. The court then asked the prosecutor if he wished further time to "adduce" additional evidence, argument or authority. The prosecutor responded that considering "the tenor of the court's statements," the stipulation of facts "which the court has found dispositive," it would be "unseemly" to try to produce different evidence and that any evidence the prosecutor might find would not "affect the court's ruling." The prosecutor then indicated he would have "nothing *further*" to offer. (Emphasis added.) We find no waiver to have occurred.

We hold that the 120-day period began on February 9, 1987, and had not expired when the trial began on June 8, 1987. Accordingly, we need not pass on the State's contention that delay attributable to defendant had tolled the running of the 120-day period. The State maintains this delay resulted from an agreement of the defendant to plead guilty which he later, before so pleading, rejected. (See *People v. Jones* (1986), 145 Ill. App. 3d 804, 495 N.E.2d 1330.) The issue is complicated, because the State did not raise this theory after the court denied the first motion for discharge. Defendant maintains the delay issue was waived.

For the reasons stated, we reverse the judgment discharging defendant and remand the cause to the circuit court of Champaign County for further proceedings.

Reversed and remanded.

McCULLOUGH and SPITZ, JJ., concur.