THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL HARPER, Defendant-Appellant.

First District (5th Division)   No. 1—94—3717

Opinion filed April 26, 1996.

Jason W. Bruce, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COUSINS delivered the opinion of the court:

The defendant, Michael Harper, was convicted in a jury trial of arson and two counts of first degree murder and sentenced to natural life imprisonment without parole. On appeal, defendant contends the trial court erred by: (1) refusing to find that the State violated his right to a speedy trial; (2) excluding evidence of a subsequent arson on the same real estate parcel; (3) refusing to quash a search warrant procured through anonymous sources and deliberately false statements; (4) withholding production of part of the State's felony review folder on the basis of work-product privilege; (5) failing to disqualify the assistant State's Attorney after his prosecutorial misconduct in defendant's first trial; (6) allowing the State to use evidence that violated the mandate of this court from defendant's first appeal; (7) admitting videotapes into evidence without a sufficient chain of custody; (8) admitting a debris sample into evidence without a sufficient chain of custody; (9) permitting the State to present the autopsy findings of a nontestifying medical examiner; (10) refusing to instruct the jury on the offense of involuntary manslaughter; (11) allowing the State to use improper closing arguments; (12) allowing the jury's verdict to stand when defendant had not been proved guilty beyond a reasonable doubt; and (13) denying defendant a fair trial by the accumulation of these trial errors.

We affirm.

BACKGROUND

On May 28, 1988, an arson occurred at the building located on the 400 block of East 63rd Street in Chicago. Pismai Panichkarn and Kiert Phophariat died from smoke inhalation during the fire. Defendant was indicted on two counts of first degree murder, one count of arson, and one count of aggravated arson. On April 23, 1990, a jury convicted defendant of arson and two counts of murder, and defendant was sentenced to natural life without parole.

Defendant appealed his conviction, and on September 3, 1993, this court reversed defendant's conviction and remanded for a new

trial in *People v. Brown*, 253 Ill. App. 3d 165, 624 N.E.2d 1378 (1993). Among the errors cited by this court were the improper introduction into evidence of a gasoline can where a chain of custody had not been established; an indirect reference by the State on defendant's decision not to testify; and argument by the State that the decedents had burned alive when there was no evidence of such a fact.

Before the second trial, defendant moved to exclude the gasoline can from evidence based on the *Brown* decision, but the motion was denied. Defendant then moved to require the State to tender its felony review folder. After performing an *in camera* inspection of the folder, the trial court allowed access to notes made with respect to defendant's confession, but the court did not allow any other access.

Defendant also sought to quash a search warrant and suppress evidence obtained after a search of his truck, arguing that the complaint for the search warrant to search the truck contained deliberately false statements. Defendant alleged that the source of information of the warrant, Mr. Sid Malone, had given testimony in defendant's first trial that contradicted the warrant's allegations. Defendant sought and received an evidentiary hearing on the matter pursuant to *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). At the hearing, the complainant for the search warrant, Detective Joseph Campbell, testified that part of the warrant's information had come from Mr. Malone, but that much of the warrant's statements came from accounts of defendant's confession which Detective Campbell had learned in conversation with other detectives. The trial court denied defendant's motion.

Lastly, defendant moved to dismiss the charges pursuant to section 103—5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—5(a) (West 1992)), arguing that the State had not brought him to trial within 120 days from the date he was taken into custody. This court's mandate reversing defendant's conviction was filed on January 14, 1994, beginning the running of the speedy-trial term. From April 19, 1994, to May 17, 1994, the term was tolled by agreement pursuant to defendant's motion to quash the search warrant. On May 17, 1994, when the *Franks* hearing was scheduled to occur, the State indicated that it was ready to proceed by way of stipulation as to the complaining detective's testimony. At this point, the trial court indicated that it had not ruled on whether defendant had met the threshold requirements to require a *Franks* hearing, although the court had previously stated on April 26, 1994, that the State had acknowledged that a hearing would be necessary. The State agreed to examine whether defendant had met the threshold. The court asked defendant for case law to support the proposition that conflict-

ing trial testimony would make a *Franks* hearing necessary. Defendant responded that *Franks* itself would show that he had met this threshold. The following colloquy ensued:

"MR. BRUCE [Defendant's Counsel]: We're going to rest on the case law which has been cited.

THE COURT: So, the Court has told you I'm giving you an opportunity to bring case law to support your position and you're not going to bring in any new case law?

MR. BRUCE: Okay.

THE COURT: Then I'll set it over.

\* \* \*

MR. BRUCE: Who will this delay be assessed against?

THE COURT: Delay is still assessed against you, Mr. Bruce. It's still your motion. This is your motion.

MR. BRUCE: We'll submit additional—

THE COURT: During the pendency of the motion, the term is not running.

MR. BRUCE: But, your Honor, the only reason we're not prepared to go today is because Detective Campbell is not here. That is not a delay attributable to us.

THE COURT: The bottom line is, Mr. Bruce, is that I have told you what the Court wants you to do and you have said I'm not going to do it.

MR. BRUCE: I would do it.

THE COURT: No.

MR. BRUCE: When should I have additional case law?"

Defendant was allowed a *Franks* hearing on May 24, 1994, when his motion was denied. From May 24, 1994, to June 30, 1994, the time period was tolled by agreement, and from June 30 until trial began on July 20, 1994, the time was charged to the State. Defendant claimed that 122 days had elapsed before defendant had been brought to trial, contending that the week from April 17 to 24, 1994, should have been charged to the State. The trial court again held that the week's delay was by agreement and, thus, denied defendant's motion because only 115 days had elapsed that were chargeable to the State.

Defendant's second trial began on July 20, 1994. The State read a transcript of the testimony of Sid Malone from defendant's first trial. Mr. Malone had testified that at 5 a.m. on May 28, 1988, he saw a van with license plate number 403 in front of a video store at the 400 block of 63rd Street. He also saw individuals walk in front of the van carrying a gas can.

Officer David Brown testified that around 5 a.m. on May 28, 1988, he saw smoke coming from the video store. He got out of his car and began knocking on storefront windows. At this point, defendant came

up to him and asked if the Chinese or Oriental people got out. Defendant also identified himself as the owner of the video store.

Detective Campbell testified as an expert in the determination of the causes and origins of fires. He testified that the fire was intentionally set and that it originated in the rear of the video store. Detective Campbell recovered debris samples from the rear of the store and executed a search warrant over defendant's Ford Bronco with license plates GAS 403. Inside the vehicle he recovered two boxes of videotapes. Detective Campbell also testified that he had been told by a citizen where to find a gasoline can near the scene of the fire and that he photographed the can. He also identified a photograph as being a photograph of the gas can.

Detective David Kutz testified that he interviewed the defendant at police headquarters. In the interview, defendant confessed that he intended to burn videotapes to collect insurance. Defendant also said that he was the only person with keys to either the video store or his Ford Bronco.

Marshall Levin testified that he rented space for a video store at 420 East 63rd Street to Michael Harper. He stated he had not owned any fire insurance on the building at the 400 block of East 63rd at the time of the fire because the cost was prohibitive.

William Tyrell testified as an expert in chemistry. He testified that debris samples from the fire scene tested positive for the residue characteristic of gasoline.

Joel Whitehouse testified that he had been an assistant State's Attorney in May of 1988 when he took a court-reported statement from the defendant. Mr. Whitehouse also testified that he was present during the execution of the search warrant on the Ford Bronco with the license of GAS 403.

Assistant Medical Examiner Nancy Jones, M.D., related to the jury the results of the autopsies performed on the decedents by Dr. Yuksel Konacki. Dr. Jones qualified Dr. Konacki's protocols, and she then read to the jury Dr. Konacki's conclusion that the two decedents had died from carbon monoxide due to smoke inhalation. Dr. Jones also testified that she concurred with Dr. Konacki's conclusion.

Firefighter Kevin Brannigan testified that the front door to the video store was locked when he arrived at the fire. After cutting off the lock, he saw the two decedents in the Thai restaurant next to the video store. Commander Frances Burns, an expert in the origins of fires, testified that the fire originated in the video store.

The defendant presented a stipulation that license plate GAS 403 was registered in the name of Geronia Hopper, and then the defense rested. The jury was instructed on counts of arson, aggravated arson,

and two counts of felony murder on the deaths resulting from the arson. Defendant argued that the jury should also be instructed on manslaughter as a lesser included offense, but the trial court refused. The jury returned verdicts of not guilty on aggravated arson, guilty on arson, and guilty on both counts of first degree murder. Defendant was sentenced to natural life without parole on his murder convictions and to a concurrent seven-year term on his arson conviction.

OPINION

I

■ Defendant first contends that the State violated section 103—5(a) by not bringing him to trial within 120 days from the date he was taken into custody. Defendant bears the burden of proving that the State has violated this statute. *People v. Smith*, 251 Ill. App. 3d 839, 842, 623 N.E.2d 857 (1993); *People v. Jones*, 104 Ill. 2d 268, 280, 472 N.E.2d 455 (1984). We will not disturb a trial court's attribution of delay to a given party absent a clear abuse of discretion. *People v. Williams*, 272 Ill. App. 3d 868, 877, 651 N.E.2d 532 (1995); *People v. Turner*, 128 Ill. 2d 540, 551, 539 N.E.2d 1196 (1989).

Defendant argues that the State was responsible for 122 days of delay before his trial, including the seven days from May 17, 1994, to May 24, 1994, when defendant's motion for a *Franks* hearing was continued. However, we conclude the trial court properly charged the defendant with the entire time period used to address defendant's motions. The applicable speedy-trial period is tolled by those delays in trial to which the defendant contributes or causes. *People v. Staten*, 159 Ill. 2d 419, 433, 639 N.E.2d 550 (1994). A delay occasioned by motions by a defendant is ordinarily chargeable to the defendant. *People v. Erickson*, 266 Ill. App. 3d 273, 276, 639 N.E.2d 979 (1994); *Jones*, 104 Ill. 2d at 278. Only in exceptional circumstances will the delay in ruling on a defense motion not be attributed to the defendant. *Erickson*, 266 Ill. App. 3d at 276.

In the instant case, the trial court granted the defendant's request to submit additional case law to support his position that a *Franks* hearing was required. Defendant first argues that because the trial court "ordered" him to submit additional authority, he should not be responsible for the delay. Nevertheless, the court gave no express or implied warning that it was considering contempt measures, and therefore we must presume that a failure by defendant to accede to the court's request for additional authority would have only resulted in denial of the motion. Moreover, even if defendant had been "ordered" to provide additional authority, defendant's continued

pursuit of his motion would constitute acquiescence in the delay directly caused by his motion. Although defendant relies on *People v. Schmidt*, 233 Ill. App. 3d 512, 599 N.E.2d 201 (1992), that court stated, "The defendant, however, must share the blame for a delay where he causes or concurs in the rescheduling." *Schmidt*, 233 Ill. App. 3d at 516.

Defendant also argues that the delay cannot be attributable to him because the trial court had already granted the State's request for a continuance. See *People v. Ferguson*, 46 Ill. App. 3d 815, 361 N.E.2d 339 (1977). However, the record demonstrates that the State never requested a continuance, and the State also told the trial court that it was ready to proceed; thus, *Ferguson* is inapposite. We conclude that the trial court's attribution of the time from May 17 to May 24 to defendant was not a clear abuse of discretion.

## II

■ Defendant argues that the court improperly excluded from evidence an arson in 1992 which occurred at the same building, but several stores away from the 1988 fire. An accused may attempt to prove that someone else committed the crime with which he is charged, but this right is not without limitation. *People v. Ward*, 101 Ill. 2d 443, 455, 463 N.E.2d 696 (1984). *Modus operandi* evidence is circumstantial evidence of identity on the basis that crimes committed in a similar manner suggest a common author, and the offenses must be so similar that evidence of one crime tends to prove that the same person committed the other criminal act. *People v. Miller*, 254 Ill. App. 3d 997, 1012, 626 N.E.2d 1350 (1993). A trial court may reject offered evidence if it has little probative value due to its remoteness and uncertainty. *Ward*, 101 Ill. 2d at 455. The admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of discretion. *Miller*, 254 Ill. App. 3d at 1011; *Ward*, 101 Ill. 2d at 455-56.

In the instant matter, we find nothing distinctive to link the two arsons at different stores other than that they both occurred at the rear of the property. We also agree with the trial court that four years was a remote period to link these two crimes. Moreover, Levin testified that the building did not have fire insurance to cover the 1988 arson, and defendant has not offered any explanation in the trial court or in this appeal for a motive by the property owner to commit the 1988 arson. The trial court did not abuse its discretion by refusing to admit the 1992 arson because of its remoteness and uncertain relevancy.

## III

■ Defendant next contends the court erred in refusing to quash

the search warrant used to search defendant's truck because the warrant was procured through anonymous sources and deliberately false statements. A reviewing court will not disturb a trial court's ruling on a motion to quash a warrant unless that ruling is manifestly erroneous. *People v. Reynolds*, 94 Ill. 2d 160, 165, 445 N.E.2d 766 (1983). As to the problem of procurement through anonymous sources, we first note that defendant never made this contention in his motion to quash the search warrant and, thus, has waived this argument by not presenting it to the trial court. *People v. Adams*, 131 Ill. 2d 387, 546 N.E.2d 561 (1989). Even were we to consider this issue, the State's anonymous source was sufficiently corroborated by defendant's confession to grant reliability to the allegations. Although defendant contends that corroboration must appear within the "four corners of the complaint," he did not make this claim until his reply brief and has cited no authority for such a claim, and, thus, he has waived this contention. 134 Ill. 2d R. 612(i); *People v. Ortiz*, 91 Ill. App. 3d 466, 414 N.E.2d 1072 (1980).

Defendant also argues that Detective Campbell gave deliberately false statements to procure the warrant because his only source for the allegations—Sid Malone—gave contradictory testimony in defendant's first trial. However, Mr. Malone could have told the statement's allegations to Detective Campbell and then changed his story at the first trial. Moreover, defendant's contention that Mr. Malone was the only source of the allegations is in error—Detective Campbell based much of the warrant's allegations on accounts of defendant's confession. Defendant also contends in his reply brief that Campbell's use of "witness*es*" in his statement was inaccurate because Mr. Malone was the only witness. However, defendant himself was a witness to his activities and gave a description that Campbell used in the warrant. The trial court's refusal to quash the warrant was not manifestly erroneous.

## IV

■ Defendant argues that he was entitled to the State's entire felony review folder, despite the work-product privilege of Supreme Court Rule 412(j). 134 Ill. 2d R. 412(j). The notes in question contained a summary of Mr. Whitehouse's investigation into the case. Defendant claims that because Mr. Whitehouse testified about the felony review process, Mr. Whitehouse waived his privilege to the felony review folder, citing *People v. Grier*, 90 Ill. App. 3d 840, 413 N.E.2d 1316 (1980). *Grier* held that when witnesses testify about a conversation, they may be impeached by their previous notes which detail that specific conversation. See also *People v. Szabo*, 94 Ill. 2d 327, 447

N.E.2d 193 (1983) (defense may inspect notes pertaining to statements of specific witness after *in camera* inspection to excise privileged matter). Unlike *Grier* and *Szabo*, defendant did not seek to impeach Mr. Whitehouse's testimony about a specific fact by his previous descriptions of that specific fact. The trial court, as in *Grier*, properly excised only the notes pertaining to a specific witness, the notes on defendant's confession. Therefore, Mr. Whitehouse did not waive the work-product privilege for the entire felony review folder with his general testimony about the felony review process. Defendant also claims that Mr. Whitehouse's notations became witness statements discoverable under Rule 412(a)(i). However, Rule 412(j) exempts work-product materials from all other disclosure requirements under Rule 412. 134 Ill. 2d R. 412(j).

## V

■ Defendant next claims that the court erred in failing to disqualify Assistant State's Attorney Michael Gerber after his prosecutorial misconduct in defendant's first trial. The defendant has not explained in his brief how this fact prejudiced him, or provided any citations that this decision was error, and thus he has waived this issue. 134 Ill. 2d R. 612(i); *Ortiz*, 91 Ill. App. 3d 466, 414 N.E.2d 1072. Moreover, we agree with the State that the Illinois Constitution provides the State's Attorney of a county the exclusive right to assign an attorney to a given trial. See Ill. Const. 1970, art. II, § 1.

## VI

■ Defendant claims that the introduction of a photo of the gasoline can was prohibited by our decision in *Brown*, which held that the State had not established a proper chain of custody to introduce the gasoline can into evidence. The doctrine of the law of the case holds that when a judgment is reversed and remanded, the trial court is bound by the reviewing court's resolution of the questions presented to it and must proceed in a manner consistent with the reviewing court's directions. *People v. Webb*, 109 Ill. App. 3d 328, 330, 440 N.E.2d 406 (1982). Despite defendant's contentions, our decision in *Brown* did not preclude introduction of the gasoline can were the State able to lay the proper evidentiary foundation. In addition, even if *Brown* had barred the introduction of the can itself, our mandate in *Brown* would not preclude descriptions of the gasoline can by witnesses or the introduction of a photo of the can through the proper evidentiary foundation. Therefore, the trial court did not violate our mandate in *Brown*.

## VII

■ Defendant argues that the court erred by admitting the

videotapes into evidence. A foundation for the admission of physical evidence may be made through its identification or through establishment of a chain of possession. *People v. Brown*, 253 Ill. App. 3d 165, 175, 624 N.E.2d 1378 (1993). The trial judge's ruling that the evidence is admissible will not be reversed absent a clear showing of abuse of discretion. *Miller*, 254 Ill. App. 3d at 1011.

In the instant case, Detective Campbell identified the box containing the videotapes by matching its inventory number of 504233 with the number on his inventory sheet, and Detective Campbell also stated that the videotapes were in substantially the same condition as when seized from the Ford Bronco. The box at trial contained 25 X-rated videotapes, and although defendant claims that police reports listed box 504233 as containing only four X-rated videotapes, Detective Campbell also testified that his report listed box 504233 as having 24 X-rated videotapes. The State need only prove to a reasonable probability that the evidence has not been changed in any important aspect (*People v. Roundtree*, 135 Ill. App. 3d 1075, 1083, 482 N.E.2d 693 (1985)), and we hold that the court's decision was not a clear abuse of discretion.

## VIII

■ Defendant also claims that the court erred by allowing the admission of the debris sample into evidence. However, as in the case of the videotapes, the State's procedures were adequate to ensure to a reasonable probability that the evidence had not been changed in any important aspect. The defendant argues that the State did not provide evidence of a continuous chain of custody following defendant's first trial. However, defendant does not dispute the adequacy of the State's procedures before the debris was tested for an accelerant, and any tampering with the debris after testing would not change its nature in any important aspect.

## IX

■ Defendant claims the court erred by permitting the State to present the autopsy findings of a nontestifying medical examiner because the evidence was hearsay. This matter is governed by statute:

> "In any civil or criminal action the records of the coroner's medical or laboratory examiner summarizing and detailing the performance of his or her official duties in performing medical examinations upon deceased persons or autopsies *** shall be received as competent evidence in any court of this State ***. ***
>
> A duly certified coroner's protocol or autopsy report, or both, complying with the requirements of this Section may be duly

admitted into evidence as an exception to the hearsay rule as prima facie proof of the cause of death of the person to whom it relates." 725 ILCS 5/115—5.1 (West 1992).

Because of section 115—5.1, the hearsay rule did not apply and the evidence was properly admitted. Defendant argues in his reply brief that the State did not properly certify and authenticate the protocols as required under section 115—5.1. However, defendant has waived this argument by not addressing section 115—5.1 and this contention in his appellate brief. 134 Ill. 2d R. 612(i); *Ortiz*, 91 Ill. App. 3d 466, 414 N.E.2d 1072.

## X

■ Defendant next claims error in the court's refusal to instruct the jury on the offense of involuntary manslaughter. However, intent is not an element of a charge of felony murder except as to the mental state towards the underlying felony. *People v. Weathers*, 18 Ill. App. 3d 338, 346, 309 N.E.2d 795 (1974). Therefore, felony manslaughter is not a possible offense, and the court properly refused to instruct the jury as to such a charge. *Weathers*, 18 Ill. App. 3d at 346. Although defendant cites our decision in *Brown* to claim that manslaughter may be considered in a felony murder case, *Brown* made no mention that felony murder was the crime at issue in our previous decision.

## XI

■ Defendant argues that nine improper comments in the State's closing argument denied him a fair trial. Improper remarks generally do not constitute reversible error unless they result in substantial prejudice to the accused. *People v. Coleman*, 158 Ill. 2d 319, 348-49, 633 N.E.2d 654 (1994). " '[T]he prosecutor is allowed a great deal of latitude in making his opening statement and closing argument. *** Although the prosecutor's remarks may sometimes exceed the bounds of proper comment, the verdict must not be disturbed unless it can be said that the remarks resulted in substantial prejudice to the accused, such that absent those remarks the result would have been different.' " *Coleman*, 158 Ill. 2d at 347, quoting *People v. Pasch*, 152 Ill. 2d 133, 184-85, 604 N.E.2d 294 (1992).

Initially, we note that as to eight of the nine statements, defendant did not both object to the statements at trial and include them in his post-trial motion, and these eight statements have been waived for review. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). The plain error rule may be invoked as an exception to the waiver rule to correct errors in criminal cases where the evidence is closely balanced or where the error was of such magnitude as to deny defendant a fair trial. *People v. Williams*, 264 Ill. App. 3d 278, 285, 636 N.E.2d 630 (1993). However, the plain error doctrine is to be

invoked only in exceptional circumstances (*People v. Easley*, 148 Ill. 2d 281, 323, 592 N.E.2d 1036 (1992)), and none of the cited comments were prejudicial to such magnitude as to deny defendant a fair trial.

The only comment objected to at trial and in the post-trial motion was the following colloquy:

> "MR. GERBER [Assistant State's Attorney]: [H]e killed two people, two people that deserved to be alive, to be working as productive members of this community.
> MR. BRUCE: Objection.
> MR. GERBER: And he smoked them.
> MR. BRUCE: Objection.
> THE COURT: Overruled."

Defendant claims that the State improperly appealed to the passions of the jury. However, it is proper to dwell on the evil results of a crime. *People v. Albanese*, 104 Ill. 2d 504, 521, 473 N.E.2d 1246 (1984). *Albanese* upheld the propriety of remarks almost identical to the comments at issue, and, thus, the trial court was correct in overruling defendant's objection.

## XII

Defendant contends that the evidence was insufficient to convict him beyond a reasonable doubt. On review, a criminal conviction will not be set aside on the grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *People v. Stanciel*, 153 Ill. 2d 218, 235, 606 N.E.2d 1201 (1992). Determinations of the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence all lie within the jury's province (*People v. Peeples*, 155 Ill. 2d 422, 487, 616 N.E.2d 294 (1993)), even where inconsistencies exist. *People v. Aguilar*, 218 Ill. App. 3d 1, 8, 578 N.E.2d 109 (1991). Thus, the relevant inquiry is:

> " ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' "

(Emphasis in original.) *People v. Kitchen*, 159 Ill. 2d 1, 25, 636 N.E.2d 433, 444 (1994), quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

In this matter, the evidence against defendant was quite substantial. Defendant confessed to the crime, he was in the area at the time of the crime, and details of his confession were corroborated by Mr. Malone and the physical evidence from the fire. The evidence was sufficient for a rational finding of guilt by the jury.

## XIII

Because defendant has failed to demonstrate any errors by the

trial court, there has been no cumulative impact of errors to deny him a fair trial. See *Albanese*, 104 Ill. 2d at 524.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McNULTY, P.J., and HOURIHANE, J., concur.